IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

VANTAGE TRAILERS, INC.,           §
                                  §
          Plaintiff,              §
                                  §
v.                                §       CIVIL ACTION NO. H-06-3008
                                  §
BEALL CORPORATION,                §
                                  §
          Defendant.              §


MEMORANDUM AND ORDER


        Pending are Defendant Beall Corporation's Motion to Dismiss

Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P.

12(b)(1) (Document No. 59)[1], and Plaintiff Vantage Trailers, Inc.'s

Motion for Partial Summary Judgment (Document No. 45). After

carefully considering the motions, responses, replies, and the

applicable law, the Court concludes as follows.


I.  Background


        This is a trademark dispute.  Plaintiff Vantage Trailers, Inc.

("Vantage") manufactures and sells various types of trailers.

Defendant Beall Corporation ("Defendant") is the holder of U.S.

Trademark Registration No. 1,622,364 (the "Mark"), issued on

November 13, 1990, covering a design of a bottom-dumping truck

_____

        [1] Also pending is Defendant's Motion to Dismiss Plaintiff's
[Original] Declaratory Judgment Complaint (Document No. 53), which
is denied as MOOT.

trailer with conical, tapered front and back ends, and which Defendant markets and sells as the "Beall Bullet." Document No. 71 ex. 1 at BI 00112; *see also* Document No. 11 ex. 1 ¶ 2.

In June or July, 2006, Defendant's President, James E. Beall, learned that Plaintiff had contacted a manufacturer regarding the possibility of building a trailer using the design covered by the Mark. Document No. 11 ex. 1 ¶ 18. Defendant's Vice President, David W. Shannon, sent to Plaintiff a letter dated July 17, 2006, noting that it had "come to [his] attention" that Plaintiff "has built or is in the process of building an aluminum bottom dump trailer with the distinctive shape of the 'Beall Bullet®.'" Document No. 11 ex. 1 ex. A. Shannon advised Plaintiff of Defendant's registered Mark, and warned that Defendant would pursue legal action against Plaintiff if it "place[d] any trailers into service that violate any of the Beall trademarks." Id. According to Plaintiff's Vice President, Brian Lemmons ("Lemmons"), the trailer referenced in the July 17th letter is depicted in an undated drawing featuring two rudimentary sketches of a pair of trailers with conical, tapered front and back ends, consisting of an unspecified material. Document No. 17 ex. 2, ex. A.

Plaintiff filed suit on September 25, 2006, seeking declarations that (1) the Mark contains "functional features" and "is not entitled to protection under the applicable trademark laws"; (2) "Plaintiff's aluminum bottom dump trailer does not and

would not infringe any valid intellectual property right owned or claimed by Defendant"; and (3) that Defendant's "assertion of a right to prohibit Plaintiff from making, using or selling a bottom dump trailer having features depicted in Defendant's alleged Mark is an act of unfair competition." Document No. 1 ¶¶ 13-17. Plaintiff also requested that Defendant "be preliminarily and/or permanently enjoined from asserting that Plaintiff has any legal obligation to refrain from designing, manufacturing, selling and/or using Plaintiff's aluminum bottom dump trailer." Id. at 5.

Defendant moved to dismiss for lack of personal and subject matter jurisdiction, but later withdrew the motion when it was misled by Lemmons's "cleverly-worded" declaration that when suit was filed Plaintiff "was working on manufacturing" the trailer depicted in Exhibit A "to meet an initial order of 160 trailers." Document No. 19; Document No. 59 at 1 (citing Document No. 17 ex. 2 ¶ 4, attached as ex. 1). Defendant then counterclaimed under federal law for trademark and trade dress infringement, false designation of origin, and dilution; and under Texas law for trademark infringement, unfair competition, unjust enrichment, and misappropriation. Document No. 22 at 4-7.

After Plaintiff filed its First Amended Complaint, which added a request for cancellation of the Mark based on the "functional features found in the design and configuration of the bottom dump trailer which makes up the Mark," Plaintiff moved for partial

3

summary judgment, contending that the Mark contains functional features and is therefore invalid.   Document No. 32 ¶¶ 18-20; Document No. 45 at 1-2.  Defendant now moves to dismiss the First Amended Complaint, asserting *inter alia* that Plaintiff cannot meet its burden of establishing that a justiciable case or controversy existed at the time Plaintiff initiated suit.  *See* Document No. 59 at 4-11.

## II.  Standard of Review

Under Federal Rule of Civil Procedure 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. *See* Hartford Ins. Group v. Lou-Con Inc., 293 F.3d 908, 910 (5th Cir. 2002).  In evaluating a motion to dismiss pursuant to Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  The question of subject matter jurisdiction is for the court to decide even if the question hinges on legal or factual determinations.  *See* id.  When accompanied by supporting evidence, a Rule 12(b)(1) motion challenging the court's jurisdiction is a factual attack.  Paterson v. Weinberger, 644 F.2d

521, 523 (5th Cir. 1981).   A plaintiff responding to a factual attack on the court's jurisdiction generally bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction.   Id.

## III.   Discussion

Defendant contends among other things that this Court is without jurisdiction because there was no justiciable case or controversy when Plaintiff filed suit for declaratory relief. Specifically, Defendant asserts that Plaintiff had not "advertise[d], produce[d], or s[old] even one accused trailer," and, moreover, had no "concrete design" for such a trailer when it filed suit on September 25, 2006.   Document No. 53 at 1; Document No. 76 at 6.   The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction
> . . . any court of the United States . . . may declare
> the rights and other legal relations of any interested
> party seeking such declaration, whether or not further
> relief is or could be sought.

28 U.S.C. § 2201(a).   The "actual controversy" requirement in § 2201(a) refers to "the type of 'Cases' and 'Controversies' that are justiciable under Article III." MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764, 771 (2007); see also Lawson v. Callahan, 111 F.3d 403, 405 (5th Cir. 1997).

The Federal Circuit previously applied a two-part test to determine whether the requisite case or controversy exists to support a declaration of invalidity, noninfringement, or unenforceability of a patent: (1) whether the declaratory plaintiff had produced or was preparing to produce an allegedly infringing product; and (2) whether the conduct of the declaratory defendant gave rise to a reasonable apprehension of suit on the part of the declaratory plaintiff. *See* Sony Elecs., Inc. v. Guardian Media Techs., Ltd., 497 F.3d 1271, 1283 (Fed. Cir. 2007). The Fifth Circuit and others adopted this standard and extended it to all types of intellectual property disputes, including trademark. *See* Texas v. W. Publ'g Co., 882 F.2d 171, 175 (5th Cir. 1989) (applying the two-part test in a copyright case, but viewing it as generally applicable to "intellectual property case[s]"); *see also* Starter Corp. v. Converse, Inc., 84 F.3d 592, 594-96 (2d Cir. 1996) (per curiam) (trademark); G. Heileman Brewing Co. v. Anheuser-Busch, Inc., 873 F.2d 985, 990 (7th Cir. 1989) (same).

The Supreme Court, however, recently abrogated the "reasonable apprehension of suit" prong of this test, concluding that it conflicts with prior Supreme Court cases. *See* MedImmune, Inc., 127 S. Ct. at 774 n.11; *see also* Sony Elecs., Inc., 497 F.3d at 1283-84 (acknowledging this result). MedImmune addressed a declaratory judgment action brought by a patent licensee who believed its own product--which accounted for 80% of its sales--was not covered by

a patent newly obtained by the licensor, and that the licensor's patent was invalid, but who had nonetheless paid royalties under protest as demanded by the licensor under the terms of the parties' preexisting license agreement.  Id. at 767-78.  Thus, the licensee's payment of royalties rendered the possibility of suit "at least remote, if not nonexistent." Id. at 772.  Examining prior cases, the Court observed that a plaintiff who is effectively coerced by a private party into eliminating a threat of suit may nonetheless bring a declaratory judgment action. Id. "The dilemma posed by that coercion--putting the challenger to the choice between abandoning his rights or risking prosecution--is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" Id. at 773 (quoting Abbott Labs. v. Gardner, 87 S. Ct. 1507, 1517 (1967)).  Thus, "[t]he rule that a plaintiff must destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business, before seeking a declaration of its actively contested legal rights finds no support in Article III." Id. at 775.

After MedImmune, "a declaratory judgment plaintiff does not need to establish a reasonable apprehension of a lawsuit in order to establish that there is an actual controversy between the parties." Sony Elecs., Inc., 497 F.3d at 1284; see also SanDisk Corp. v. STMicroelecs., Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("The Supreme Court's opinion in MedImmune represents a rejection

7

of our reasonable apprehension of suit test."); <u>Teva Pharms. USA,</u>
<u>Inc. v. Novartis Pharms. Corp.</u>, 482 F.3d 1330, 1339 (Fed. Cir.
2007) (concluding that <u>MedImmune</u> overruled the reasonable-
apprehension-of-suit test).  Instead, the existence of a case or
controversy depends on "'whether the facts alleged, under all the
circumstances, show that there is a substantial controversy,
between parties having adverse legal interests, of sufficient
immediacy and reality to warrant the issuance of a declaratory
judgment.'" <u>MedImmune</u>, 127 S. Ct. at 771 (quoting <u>Md. Cas. Co. v.</u>
<u>Pac. Coal & Oil Co.</u>, 61 S. Ct. 510, 512 (1941)) (internal quotation
marks omitted); *see also* <u>Teva Pharms.</u>, 482 F.3d at 1339 (applying
a totality of the circumstances approach after <u>MedImmune</u>).
Although no bright line separates justiciable from non-justiciable
declaratory actions, the decisions of the Supreme Court

> have required that the dispute be definite and concrete,
> touching the legal relations of parties having adverse
> legal interests; and that it be real and substantial and
> admi[t] of specific relief through a decree of a
> conclusive character, as distinguished from an opinion
> advising what the law would be upon a hypothetical state
> of facts.

<u>MedImmune</u>, 127 S. Ct. at 771 (internal quotation marks omitted);
*see also* <u>Venator Group Specialty, Inc. v. Matthew/Muniot Family</u>,
322 F.3d 835, 838 (5th Cir. 2003).  The party seeking declaratory
relief bears the burden of establishing the existence of
jurisdiction at the time suit was filed.  *See* <u>Steffel v. Thompson</u>,

94 S. Ct. 1209, 1216 n.10 (1974); <u>Benitec Australia, Ltd. v.</u>
<u>Nucleonics, Inc.</u>, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

A party "need not have engaged in actual manufacture, use, or
sale of a potentially infringing product in order to seek a
declaratory judgment of noninfringement." <u>Int'l Harvester Co. v.</u>
<u>Deere & Co.</u>, 623 F.2d 1207, 1215 (7th Cir. 1980); *see also* <u>W.</u>
<u>Publishing Co.</u>, 882 F.2d at 175 (requiring proof in a copyright
case that the declaratory plaintiff "has actually published *or is*
*preparing to publish* the material that is subject to the
defendant's copyright and that such publication places the parties
in a legally adverse position" (emphasis added)).  However, absent
actual manufacture, use, or sale, the declaratory plaintiff must
have undertaken "meaningful preparation for such activity" in order
to demonstrate the requisite controversy.  *See* <u>Arrowhead Indus.</u>
<u>Water, Inc. v. Ecolochem, Inc.</u>, 846 F.2d 731, 736 (7th Cir. 1988);
*see also* <u>DuPont Merck Pharm. Co. v. Bristol-Myers Squibb Co.</u>, 62
F.3d 1397, 1401 (Fed. Cir. 1995) (requiring a showing of meaningful
preparation for making, selling, or using an allegedly infringing
product); <u>G. Heileman Brewing Co.</u>, 873 F.2d at 990-91 (requiring
that the plaintiff be "actively preparing to produce" an allegedly
infringing product).  Stated differently, the declaratory plaintiff
must have "engaged in a course of conduct evidencing a 'definite
intent and apparent ability to commence use'" of the defendant's
trademark.  <u>Starter Corp.</u>, 84 F.3d at 595-96 (2d Cir. 1996), *citing*

_Golden Gulf Corp. v. Jordache Enterprises, Inc._, 896 F. Supp. 337, 340 (S.D.N.Y. 1995).

Here, Plaintiff does not contend that it had actually manufactured, sold, or marketed a bottom-dump trailer before it filed this suit on September 25, 2006.  Instead, both the Original Complaint and First Amended Complaint assert that Plaintiff was "_planning_ to manufacture and sell an aluminum bottom dump trailer having support structures situated at the front and rear of a central payload bay," and that it was "_in the process of designing_ and manufacturing products Defendant has claimed will infringe the Mark."  Document No. 1 ¶¶ 6, 11; Document No. 32 ¶¶ 6, 11 (emphasis added).  Plaintiff's preparations to produce a trailer, such as they were, are detailed in a series of declarations made by Plaintiff's Vice President Lemmons.  In his original declaration dated December 1, 2006, Lemmons explained that, at the time Plaintiff received Defendant's July 17, 2006 cease-and-desist letter, Plaintiff was in the process of building an aluminum bottom-dump trailer "of the design shown in" a skeletal, undated drawing attached as Exhibit A, thereafter referred to by him as the "accused bottom dump trailer[ ]."  Document No. 17 ex. 2 ¶ 3, ex. 2-A.  In a second declaration dated October 10, 2007, Lemmons referred to Exhibit A as the "original[ ] design[ ]" of Plaintiff's trailer.  Document No. 62 ex. 2 ¶ 3.  Lemmons's third declaration on November 5, 2007, stated that before suit was filed on

September 25, 2006, Plaintiff was "working with an outside engineer for the development, testing, and completion of design work for the *initial* design" of a trailer as reflected in that same Exhibit A. Document No. 75 ex. C at ¶ 3(a) (emphasis added).[2]

Lemmons's references to Exhibit A--the only arguable evidence that even so much as a trailer design was in existence when suit was filed--as Plaintiff's "original" or "initial" design concede by negative implication that Plaintiff not only had not built a trailer but also had never finalized a design for a trailer before filing this action.   Indeed, Plaintiff expressly admitted in discovery that "aspects of the design reflected by [Exhibit A] have changed . . . ."  Document No. 53 ex. 3 at 4.   Moreover, the uncontested record evidence reflects that Plaintiff's trailer design has continued to evolve during the pendency of this case. *See* Document No. 77, <u>Declaration of Donna Chamberlin</u>, exs. 1-3. For example, Plaintiff's document productions on May 24, 2007 and July 16, 2007, included various renditions of bottom-dump trailers,

---

[2] In this most recent declaration, Lemmons also asserted that "[s]ince March 2006, [Plaintiff] has at all times continuously and diligently been working to produce the *accused bottom dump trailers*," using that term not in reference to Exhibit A, as he did before, but as *now* depicted in several undated photographs of a trailer posted on Plaintiff's website. Document No. 75 ex. C ¶ 3 (emphasis added), ex. C-1.  However, Lemmons conceded that, as of September 25, 2006, Plaintiff had completed only "a sub-frame for use in the assembly" of a trailer, <u>id.</u> ¶ 3(d), and that it did not produce an actual trailer until a year later, September 27, 2007, Document No. 62 ex. 2 ¶ 4.   The "accused bottom dump trailer" depicted in these recent photos therefore did not exist at the time Plaintiff filed suit.

including different depictions dated April 13, 2007 and June 29, 2007. Id. Plaintiff's customer, Alan Olsen, President of Mountain States Trailer, Inc., testified that Plaintiff periodically sent to him different depictions of trailers during the latter part of 2006 and early 2007. Document No. 77 ex. B at 70:7-76:23. Lemmons himself admitted that it was not until September 27, 2007--more than a year after Plaintiff filed this case--that Plaintiff completed a first production unit of a bottom-dump trailer, which it sold to Olsen's company. Document No. 62 ex. 2 ¶ 4.

In a similar case, Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc., the Federal Circuit affirmed a district court's dismissal of a plaintiff's declaratory claims of invalidity and noninfringement of a defendant's patents based on the lack of an immediate and real controversy. 363 F.3d 1361, 1367, 1378-80 (Fed. Cir. 2004). Because the plaintiff had presented no evidence that it had built a prototype of its "Billings 150 kW power supply" until at least a year after commencement of suit, the court concluded that the plaintiff had failed to show a controversy of sufficient "immediacy" when the case was filed. Id. at 1379. The evidence also belied the presence of a "real" conflict because "the design of the Billings 150kW power supply was fluid and indeterminate" and not "substantially fixed, particularly in its potentially infringing characteristics" when plaintiff filed suit, as highlighted by plaintiff's discovery responses a year later

12

announcing its completion of development.  Id. at 1379-80.  The
fluidity of the design rendered it "impossible to determine--on
[the date of suit]--whether any eventual design of the Billings 150
kW power supply would infringe AEI's patents."  Id. at 1380.

The same is true here.  Plaintiff has neither asserted nor
proven that it had a substantially fixed and definite trailer
design when it filed this declaratory judgment action on September
25, 2006.  To the contrary, the record evidence, including
Plaintiff's own express and implied admissions, reflects that
Plaintiff changed its designs over the course of litigation.  "For
a decision in a case such as this to be anything other than an
advisory opinion, the plaintiff must establish that the product
presented to the court is the same product which will be produced
if a declaration of noninfringement is obtained."  Int'l Harvester,
623 F.2d at 1216; see also Sierra Applied Sciences, Inc., 363 F.3d
at 1379 (quoting Int'l Harvester).  Thus, "[t]he existence of an
actual justiciable controversy depends upon the definiteness of
the plaintiff's intention to produce a particular product which
presents a question of possible infringement."  Int'l Harvester,
623 F.2d at 1216-17 & n.11 (emphasis added) (holding plaintiff's
creation of an experimental apparatus which was undergoing testing
and to which extensive design changes were anticipated did not give
rise to a justiciable controversy).  Plaintiff at best has
established that it was making preparations for designing and

possibly manufacturing a trailer whose features were "fluid and indeterminate" when it filed this suit. Sierra Applied Sciences, Inc., 363 F.3d at 1379. To resolve whether such an inchoate design infringes on the Mark would therefore require the Court to determine "what the law would be upon a hypothetical state of facts"--a result tantamount to an impermissible advisory opinion. MedImmune, 127 S. Ct. at 771 (internal quotation marks omitted).

Assuming that Plaintiff finally settled upon its trailer design by time it completed its first production unit on September 27, 2007, by that date more than a year had passed since Plaintiff filed this suit, a period of time comparable to the delay deemed too long in Sierra Applied Sciences. Notwithstanding Plaintiff's professed "continuous[ ] and diligent[ ]" work towards production prior to and throughout the pendency of this case, Document No. 75 ex. C ¶ 3, when Plaintiff actually filed the suit its activities at that time had not progressed to a point necessary to substantiate the existence of immediacy, see Sierra Applied Sciences, Inc., 363 F.3d at 1378-79, and Plaintiff was not imminently able to use Defendant's trademark, see, e.g., Starter Corp., 84 F.3d at 595-96 (requiring a demonstration of imminent intent and ability to use a trademark).

Plaintiff has also overstated the extent of its marketing and sales activities before it filed suit. For instance, Lemmons represented that Plaintiff was "working on manufacturing" the

14

trailers depicted in Exhibit A "to meet an *initial order* for at least 160 trailers." Document No. 53 ex. 1 ¶ 4 (emphasis added). The deposition testimony of that putative customer, Alan Olsen of Mountain States Trailer, Inc., belies the claim. Olsen testified that he did *not* place an order with Plaintiff for any bottom-dump trailers. Document No. 77 ex. B at 104:15-25. Instead, after having had discussions with Plaintiff about the "potential" for acquiring bottom dump style trailers, Olsen in a letter dated August 25, 2006, expressed to Plaintiff that he was "confident in committing" to Plaintiff that his business would purchase up to 80 sets of "semi style and pull type trailers." Document No. 60 ex. 4-10. Olsen, a distributor of trailers, testified that he aspired to resell Plaintiff's "total supply of whatever [Plaintiff] thinks [it] can manufacture." Document No. 60 ex. 4 at 104. Olsen's "commitment" was further made contingent on numerous undefined factors, including unspecified "quality standards," unspecified payload capacities, satisfaction of federal and state standards for "overall length and weight," and "of course a competitive unit pricing." Id. At the time, Plaintiff had not presented Olsen with a price list, advertising materials, or a sample trailer. In fact, having never seen one of Plaintiff's trailers, Olsen testified, "for all I know [Plaintiff's trailer] is all wishful thinking." Document No. 77 ex. B at 101:12-19, 106:23-24. It is therefore apparent that Olsen's "willingness" to

buy the purported trailers was highly contingent on many factors--
even including the design of the trailer itself--all of which were
indeterminate prior to the filing of this suit.

Although Plaintiff also cites various costs it incurred while
undertaking its preparations to manufacture a bottom-dump trailer,
*see* Document No. 62 ex. 2 ¶¶ 6-7; Document No. 75 ex. C ¶ 3, the
Declaratory Judgment Act "is not . . . intended to shield the
plaintiff from all risks and expenses involved in designing and
developing a new product." Int'l Harvester Co., 623 F.2d at 1217.
Instead, "the plaintiff's preparations for production must have
proceeded to the point at which any further action might prejudice
the interests of the [defendant]." Id. Such was not the case here
on September 25, 2006. Plaintiff was then only in the early stages
of developing a design for a trailer and had no facilities in which
to manufacture it. At that time, nothing was fixed and certain,
and only an advisory opinion could have been rendered on whatever
initial or preliminary plans Plaintiff envisioned at the time. In
short, there was no controversy of sufficient immediacy or reality
to invoke the Court's jurisdiction.

Moreover, Plaintiff cannot rely on its post-suit activities to
substantiate the existence of a sufficiently real and immediate
controversy at the time it filed suit on September 25, 2006. *See*
Sierra Applied Sciences, Inc., 363 F.3d at 1376 (explaining that
post-filing conduct is not relevant to whether a case or

16

controversy existed at the time suit was filed); *see also* ADC Telecomm., Inc. v. Switchcraft, Inc., No. CIV04-1590 ADM/JSM, 2005 WL 3487740, at ** 5-6 (D. Minn. Dec. 21, 2005) (relying on Sierra and concluding that a product design "substantially fixed" a year after the filing of a declaratory counterclaim "can not give rise to sufficient reality to support Switchcraft's declaratory judgment action at the time of the filing of its counterclaim").  In sum, Plaintiff has not met its burden of proving by a preponderance of the evidence from the totality of the circumstances that an immediate and real controversy existed at the time Plaintiff filed this suit.  Accordingly, Defendant is entitled to dismissal of Plaintiff's requests for declarations of noninfringement and invalidity.  Plaintiff's Motion for Partial Summary Judgment on the issue of invalidity is therefore denied as moot.  Document No. 45.

Plaintiff's additional request that the Court cancel Defendant's Mark derives from and is dependent on its declaratory claim to invalidate the Mark.  Document No. 32 ¶¶ 18-20.  Thus, for the reasons explained above, Plaintiff's failure to demonstrate a justiciable case or controversy with respect to its claim of invalidity likewise requires dismissal of Plaintiff's claim to cancel the Mark.

Plaintiff's remaining claim for injunctive relief asserts, "Defendant's assertion of a right to prohibit Plaintiff from making, using or selling a bottom dump trailer having features

depicted in Defendant's alleged Mark is an act of unfair competition . . . ." Document No. 32 at 3 ¶ 17. Citing Texas cases, Plaintiff contends that this claim is premised on Defendant's assertion of rights under the Mark through its July 17, 2006 cease-and-desist letter.[3] Document No. 75 at 10. Under Texas law, "[t]he tort [of unfair competition] requires that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business." Taylor Publ'g Co. v. Jostens, Inc., 216 F.3d 465, 486 (5th Cir. 2000) (citing Shoellkopf v. Pledger, 778 S.W.2d 897, 904-05 (Tex. App.-- Dallas 1989, writ denied). "Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort." Id. Plaintiff precisely pleads that the basis for its unfair competition claim is "Defendant's assertion of a [non-valid] right to prohibit Plaintiff from making, using or selling a bottom dump trailer having features depicted in Defendant's alleged Mark." The necessary implication of the unfair competition claim, therefore, is that the assertion is unfair competition because the Mark is either *invalid* or because the Mark

---

[3] Plaintiff additionally contends Defendant's alleged false advertising of the Beall Bullet as a "patented" trailer is an act of unfair competition. Document No. 75 at 9-10. However, the unfair competition claim as pled in the Amended Complaint is plainly limited to Defendant's assertion of a right to restrict Plaintiff's use of the Mark, and cannot reasonably be construed to encompass this alleged act of false advertising. *See* Document No. 32 at 3 ¶ 17.

is *not infringed* by Plaintiff's possible product.  Because, as held above, no case or controversy had arisen when this case was filed on either the *validity* of the Mark or whether it was *infringed* by Plaintiff's preliminarily planned product, neither premise can serve as an independent tort to support Plaintiff's unfair competition claim.  Otherwise, Plaintiff would impermissibly be pursuing through the back door the identical claims analyzed above and over which the Court finds it has no jurisdiction, namely, that the Mark was either invalid or that Plaintiff's preliminary depiction of a trailer would not infringe Defendant's valid Mark. Hence, the unfair competition claim must also be dismissed.  *Cf.* Decorative Ctr. of Houston, L.P. v. Direct Response Publications, Inc., 208 F. Supp. 2d 719, 735 (S.D. Tex. 2002) (Atlas, J.) (concluding a claim of unfair competition could not be premised on a tortious interference with contract claim that the court had dismissed).

Finally, Defendant has requested the Court to dismiss its counterclaims if its Motion to Dismiss Plaintiff's First Amended Complaint is granted, to which Plaintiff is opposed unless the dismissal is with prejudice.  Defendant's counterclaims involve the same issues regarding the parties' respective rights to the trailer design depicted in the Mark as do Plaintiff's claims for declaratory and injunctive relief.   As such, Defendant's counterclaims are compulsory.  *See* Fed. R. Civ. P. 13(a).

19

When, as here, the Amended Complaint has been dismissed for want of a case or controversy, the Court has no power to retain Defendant's compulsory counterclaims.  *See* Int'l Video Corp. v. Ampex Corp., 484 F.2d 634, 637 (9th Cir. 1973) (noting in a patent case that dismissal of claims and counterclaims was required "because the court lacks jurisdiction to adjudicate unless there is an actual controversy"); *see also* Fed. Deposit Ins. Corp. v. Project Dev. Corp., No. 86-5490, 1987 WL 37488, at *3 (6th Cir. 1987) (unpublished opinion) (observing that "because the counter-claim stated issues identical to the issues raised in the complaint, and the complaint was properly dismissed for lack of actual controversy, the counterclaim should also have been dismissed for the same jurisdictional defect"); Pioche Mines Consolid., Inc. v. Fidelity-Philadelphia Trust Co., 206 F.2d 336, 336 (9th Cir. 1953) ("Compulsory counterclaims are required to be dismissed only when the complaint is dismissed for want o[f] jurisdiction.").  "The filing of a compulsory counterclaim does not establish a justiciable controversy where none previously existed." 27 FEDERAL PROCEDURE LAWYERS EDITION § 62:228 (2002) (citing Int'l Video Corp.).  Accordingly, Defendant's counterclaims must be dismissed for lack of jurisdiction.  *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also* Chamfer Eng'g, Inc. v. Tapco Int'l, Inc., 498 F. Supp. 129, 131

(S.D. Tex. 1980) (noting that "Rule 12 dismissals are nondiscretionary and are to be entered whether the parties object or not").

IV. <u>Order</u>

Accordingly, it is

ORDERED that Defendant Beall Corporation's Motion to Dismiss Plaintiff's First Amended Declaratory Judgment Complaint (Document No. 59) is GRANTED, and Plaintiff's First Amended Declaratory Judgment Complaint is DISMISSED for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  It is further

ORDERED that Defendant Beall Corporation's Counterclaims (Document No. 22) are likewise DISMISSED for lack of subject matter jurisdiction, and Plaintiff Vantage Trailers, Inc.'s Motion for Partial Summary Judgment (Document No. 45) is DENIED as MOOT.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 31st day of January, 2008.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE